No. 75,674

FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant*,
v. SCOTT KURTENBACH, by and through his father and next
friend Glenn Kurtenbach, GLENN KURTENBACH and BARBARA
KURTENBACH, husband and wife, CHRISTOPHER L. SPELTZ, by
and through his father and next friend Robert Speltz, LYLE
NELSON, and METROPOLITAN PROPERTY & CASUALTY
INSURANCE COMPANY, *Appellees*.

(961 P.2d 53)

Opinion filed July 10, 1998.

*John D. Conderman*, of Arthur, Green, Arthur, Conderman, Stutzman & Roberson, L.L.P., of Manhattan, argued the cause and *Derrick L. Roberson*, of the same firm, was with him on the briefs for appellant.

*Steven Hornbaker*, of Harper, Hornbaker, Altenhofen & Opat, Chartered, of Junction City, argued the cause and was on the brief for appellees Scott Kurtenbach, Glenn Kurtenbach, and Barbara Kurtenbach.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee Metropolitan Property & Casualty Insurance Company.

The opinion of the court was delivered by

Davis, J.: Farm Bureau Mutual Insurance Company, Inc., (Farm Bureau) filed a declaratory judgment action against its insureds, Glenn Kurtenbach and Barbara Kurtenbach, seeking a determination that it had no duty to defend or to pay any judgment under its Farm Master policy. The Kurtenbachs had been sued for damages based upon a collision between a motorcycle operated by their son Scott and a vehicle driven by Lyle Nelson. We granted Farm Bureau's petition for review of the Court of Appeals' decision affirming the decision of the trial court that coverage existed and also affirming the trial court's award of attorney fees and expenses. We affirm the judgment of the Court of Appeals as modified.

We must decide two questions: (1) whether the Court of Appeals' decision affirming the trial court's judgment that coverage existed under the Farm Master policy issued to the Kurtenbachs is correct and (2) whether Farm Bureau is responsible for attorney fees and expenses incurred by its insured in the successful defense of Farm Bureau's declaratory judgment action seeking a determination that no duty to defend or pay existed under the policy.

The material facts in this case are undisputed. Farm Bureau issued a Farm Master insurance policy to the defendants Glenn and Barbara Kurtenbach. On July 20, 1992, a motor vehicle accident occurred involving a motorcycle owned by the Kurtenbachs, and driven by their son Scott, and an automobile driven by defendant Lyle Nelson. Christopher Speltz, who was not a party to the underlying liability suit, was a passenger on the motorcycle driven by Scott.

The accident occurred as Scott attempted to drive the motorcycle across U.S. Highway 56. The Kurtenbachs owned and rented land on both sides of Highway 56 and, according to Glenn Kurtenbach, it was a necessary part of farming operations to drive the motorcycle across the highway to access that part of his farm on the other side. Scott was using the motorcycle in farming operations at the time of the accident.

The motorcycle was a 1978 Yamaha DT 175 dirt and trail bike. It had been purchased for farm use and had never been licensed or registered since its purchase in 1979. In his deposition, Glenn Kurtenbach stated that he used the motorcycle primarily for farm purposes although he would sometimes ride the motorcycle on his property to "have fun with it" or to go fishing. Scott had ridden the motorcycle on the township road west of his parents' house approximately 10 to 15 times. The motorcycle was equipped with headlights, a speedometer, a brake light, turn indicators, one mirror, and a horn, although the horn did not work. It was also equipped with a muffler, front and back fenders, and a tachometer.

The dispute in this case centers upon the incidental coverage provisions of the Farm Master policy. The Farm Master policy is a comprehensive general liability policy insuring the Kurtenbach's farm, including their dwelling and 805 acres. The policy expressly excludes from coverage:

"1. Bodily injury or property damage arising out of the ownership, maintenance or use of:

. . . .

b. motorized vehicles or watercraft owned or operated by or rented to an insured person, except as provided under Incidental Liability and Medical Coverages."

However, the policy provides coverage under "INCIDENTAL MOTORIZED VEHICLE COVERAGE" in the following circumstances:

"2. INCIDENTAL MOTORIZED VEHICLE COVERAGE. We pay for bodily injury or property damage which:
a. occurs on the insured premises and results from the ownership, maintenance, use, loading or unloading of:
(1) Motorized Vehicles not subject to motor vehicle registration because of their type or use; or
(2) Recreational Motor Vehicles;
b. occurs anywhere and results from:
(1) golf carts being used for golfing purposes;
(2) utility, boat, camping trailers except when the trailer is carried on, towed by or attached to a motor vehicle or recreational motor vehicle owned by an insured;
c. motorized vehicles designed exclusively for use off public roads and used principally to service the insured premises."

The question of coverage and the question involving the award of attorney fees are questions of law in this case. Our review is unlimited, and we are not bound by the prior determinations of the trial court and the Court of Appeals. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

## Coverage

The trial court and the majority and dissenting opinions of the Court of Appeals all concluded that the accident occurred "on the insured premises" under Incidental Motorized Vehicle Coverage Provision 2.a. However, the trial court and the Court of Appeals arrived at different conclusions regarding coverage questions under the remaining provisions of the Incidental Motorized Vehicle Coverage in the policy. The trial court based its coverage determination upon its conclusion that the incidental coverage provisions of the policy were ambiguous. Provision 2.c. provides that Farm Bureau "pay[s] for bodily injury or property damage which: . . . motorized vehicles designed exclusively for use off public roads and used principally to service the insured premises." While it is true that language such as "results from" is missing from 2.c., the lack of such language does not automatically create an ambiguity calling for a determination of coverage.

The Court of Appeals did not reach the question of ambiguity under the provisions of 2.c. but decided the question under 2.a.(1) which provides:

"2. INCIDENTAL MOTORIZED VEHICLE COVERAGE. We pay for bodily injury or property damage which:
    a. occurs on the insured premises and results from the ownership, maintenance, use, loading or unloading of:
        (1) Motorized Vehicles not subject to motor vehicle registration because of their type or use."

Like the Court of Appeals, we do not reach the question of the ambiguity of 2.c. relied upon by the trial court, but instead base our decision upon 2.a. Thus, in our review, two questions are involved in determining if 2.a.(1) provides coverage: (1) whether the bodily injury or property damage occurred on the insured premises and (2) whether it resulted from the ownership of a motorized

vehicle not subject to motor vehicle registration because of its type or use.

## (1) Did the accident occur on the insured premises?

The accident occurred on Highway 56, property not owned by the Kurtenbachs. Farm Bureau asked that we construe its policy focusing upon the definition of "insured premises" and conclude as a matter of law that this accident did not occur on the insured premises. At the time the policy was issued, the insured owned property and farmed property split by Highway 56. As a result, it is necessary to examine the policy language to determine whether the accident occurred on the insured premises.

While not bound by the trial court's determination of this issue or the determination of either majority or dissenting opinions of the Court of Appeals on this issue, we note that all concluded under the given facts that even though the accident occurred on Highway 56, it occurred "on the insured premises" within the provisions of the policy.

In discussing the trial court's finding that the accident occurred on the insured premises, the majority opinion of the Court of Appeals stated:

"The policy defines 'insured premises' in part as: 'the farming premises which you own, rent or operate described in the declarations.' The policy defines 'farming' as 'the maintenance or use of premises for the production of crops or the raising or care of livestock, *including all necessary operations.*' (Emphasis added.) The court accepted [Kurtenbachs'] argument that driving the motorcycle across Highway 56 was a necessary part of farming operations and, therefore, occurred on the 'farming premises.' Farm Bureau challenges this finding.

"Farm Bureau first points out that the Kurtenbachs do not own Highway 56. The ownership of Highway 56 is not determinative of whether the highway could be part of the Kurtenbachs' 'farming premises.' 'Farming premises' includes not only land owned by the insured, but also land rented or operated by the insured.

"The Kurtenbachs do not own or rent Highway 56. The trial court found, however, that they operated on Highway 56 because driving the motorcycle across the highway was a necessary part of farming operations. Glenn Kurtenbach stated it was a necessary part of farming operations to drive the motorcycle across Highway 56 from the farm to the rental property. Farm Bureau argues that driving the motorcycle across the highway does not constitute 'the maintenance or use of the premises for the production of crops or the raising or care of livestock,' citing *Shatoska v. Widdon*, 468 So. 2d 1314 (La. App. 1985), in support of its position.

*Shatoska* is distinguishable on its facts. The insurance policy defined 'insured location' as the residence premises or any premises used by the insured in connection with the residence premises. The plaintiff was injured in an accident, and the defendant's deposition indicated that the road where the accident occurred was a service road coming into the insured's apartment complex. A survey plat map revealed, however, that the road was not a part of the apartment complex, and the court concluded that the accident did not take place on an insured location. 468 So. 2d at 1317-18.

"Farm Bureau also cites *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104 (Iowa 1981). In that case, the insurance policy provided coverage for accidents occurring 'in the insured premises or the ways immediately adjoining.' 302 N.W.2d at 107. The rationale of *Sandbulte* may be sound, but the decision is distinguishable based on its facts. The definition of 'insured premises' in the case at bar differs significantly from the definition in *Sandbulte*. Here, the 'insured premises' includes any land operated by the insured for farming, and farming encompasses all operations necessary for the maintenance or use of premises to produce crops or raise livestock.

"In concluding that the accident occurred on the 'insured premises,' the court applied a reasonable expectation test. ' " 'In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties.' " [Citation omitted.]' *American States Ins. Co. v. McCann*, 17 Kan. App. 2d 820, 824, 845 P.2d 74, *rev. denied* 252 Kan. 1091 (1993). In determining the intent of the parties, the test is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Kansas Farm Bureau Ins. Co. v. Cool*, 205 Kan. 567, 572, 471 P.2d 352 (1970); see *Saucedo v. Winger*, 22 Kan. App. 2d 259, 261, 915 P.2d 129 (1996).

"The rental property was part of the Kurtenbachs' farming operations. To access the property, they had to cross Highway 56. Unlike the facts in *Sandbulte* where the insured was using the road to travel from one tract to another, Scott was merely crossing the road. In *Sandbulte*, the separate tracts of property were connected by roads which made it possible for the insured to travel from one tract to another. In contrast, the farming operations in this case were separated by a highway which impeded the Kurtenbachs' access to the rental property.

"Arguably, it would be unreasonable for Kurtenbach to assume that section 2.a.(1) of his Farm Master policy provided coverage for an accident that might occur as he was operating his motorcycle on a road to reach a tract of land several miles away. In that case, he would be utilizing a public road much as any registered, licensed vehicle to travel from one destination to another.

"By contrast, because traveling across Highway 56 was a necessary part of the Kurtenbachs' farming operations, it would be reasonable for them to assume coverage under section 2.a.(1).

"As a general rule, coverage clauses are interpreted broadly to afford the greatest possible protection to the insured. *United States Fidelity & Guar. Co. v.*

*Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 589, 582, 584 P.2d 1264 (1978). Accordingly, the trial court did not err in concluding that the accident occurred on the 'insured premises' as defined by the policy."

Judge Lewis, in his dissenting opinion, agreed with the majority's conclusion:

"I agree with the majority's conclusion that the accident in question took place on the insured premises. I realize that the insureds did not own U.S. Highway 56 on which the accident took place. However, the fact that the insureds were required to cross this highway in order to obtain access to their rental ground is sufficient to allow us to conclude that the accident took place on the 'insured premises.' "

We agree with the above analysis. In its policy, Farm Bureau defined "insured premises" as "the farming premises which you own, rent, or operate." "Farming" is defined as "the maintenance or use of premises for the production of crops or the raising or care of livestock, including all necessary operations." Because traveling across Highway 56 was a necessary operation to access rented property of the insured in his farming operation, we conclude that the accident occurred "on the insured premises" within the meaning expressed in Farm Bureau's Farm Master policy.

(2) Was the motorized vehicle subject to motor vehicle registration because of its type or use?

This is the issue which divided the Court of Appeals. The majority decision, authored by Chief Judge Brazil, after determining that the accident occurred on the insured premises, concluded that the bodily injury or property damage resulted from the ownership and use of a motorized vehicle not subject to motor vehicle registration because of its use. According to the majority opinion, the motorcycle was an implement of husbandry as defined by K.S.A. 8-126(cc) and was therefore exempt from registration under K.S.A. 8-128(a)(1).

K.S.A. 8-126(cc) defines an implement of husbandry as:

"[E]very vehicle designed or adapted and used exclusively for agricultural operations and only incidentally moved or operated upon the highways. Such term shall include, but not be limited to:
(1) A farm tractor;
(2) a self-propelled farm implement; .

"(3) a fertilizer spreader or nurse tank used exclusively for dispensing or spreading water, dust or liquid fertilizers or agricultural chemicals, as defined in K.S.A. 2-2202, and amendments thereto, regardless of ownership."

In his dissenting opinion, Judge Lewis concluded that the motorcycle was not exempt from registration as an implement of husbandry because it was not "used exclusively for agricultural operations" as required by the definition of an implement of husbandry in K.S.A. 8-126(cc). Judge Lewis reasoned that the motorcycle was street legal and subject to motor vehicle registration under the provisions of K.S.A 8-127 and, therefore, not covered under the Incidental Motorized Vehicle Coverage provision.

The majority acknowledged that the motorcycle was not "used exclusively for agricultural operations" but concluded:

"In this case, a motorcycle was occasionally used for fun and fishing. Because an exact and literal interpretation of the definition of implement of husbandry would not serve the purpose of the registration requirement, the statute should be construed according to its spirit and reason. Such a construction of the statute allows a vehicle to retain its status as an implement of husbandry despite de minimis recreational use. Accordingly, the district court did not err in finding that based on its use, the motorcycle was not subject to vehicle registration, and therefore section 2.a.(1) provided coverage."

Section 2.a.(1) of the Incidental Motorist Provision provides coverage for motorized vehicles that are not subject to motor vehicle registration because of their type or use. The terms of the policy necessarily refer us to the provisions of Kansas law relating to registration. Judge Lewis noted in his dissent that the motorcycle we deal with was "street legal." By that he meant that the vehicle had all the equipment required by law for operation on the public highways of this state, including a headlight, turn indicators, a speedometer, a brake light, a muffler, front and back fenders, a tachometer, a mirror, and a horn. It is the *type* of motor vehicle subject to registration. We may conclude in accord with the statute and terms of the policy that based upon its *type*, the motorcycle is subject to registration. However, this conclusion does not end our inquiry, for we must, as the Court of Appeals did, examine the use made of the motorcycle and determine whether it is not subject to motor vehicle registration because of its use.

We are not convinced that the motorcycle in this case fits the definition of an implement of husbandry as determined by the Court of Appeals. It does not appear that the motorcycle was designed for agricultural operations in accord with K.S.A. 8-126(cc). While used in farming operations by the Kurtenbachs, it does not appear to have been adapted for agricultural operations in accord with K.S.A. 8-126(cc). See, *e.g.*, *Utah Farm Bureau v. Orville Andrews & Sons*, 665 P.2d 1308 (Utah 1983) (pickup truck adapted for farm use by the installation of a feeder box). Finally, as pointed out in the dissenting opinion, the motorcycle was not used exclusively for agricultural operations in accord with K.S.A. 8-126(cc). Contrary to the majority opinion of the Court of Appeals, we conclude that the motorcycle involved was not an "implement of husbandry" and, therefore, not exempt from motor vehicle registration under the provisions of K.S.A. 8-128(a)(1).

However, even though the motorcycle is not specifically exempted from registration under K.S.A. 8-128, it may still not be subject to registration under Kansas law. K.S.A. 8-127 governs motor vehicle registration in this state. It provides:

"(a) Every owner of a motor vehicle, motorized bicycle, trailer or semitrailer intended to be operated upon any highway in this state, whether such owner is a resident of this state or another state, or such motor vehicle, motorized bicycle, trailer or semitrailer is based in this state or another state shall, before any such vehicle is operated in this state, apply for and obtain registration in this state under the provisions of K.S.A. 8-126 to 8-149, inclusive . . . ."

Thus, the motorcycle in this case may not be subject to registration if it is not "intended to be operated upon any highway in this state." K.S.A. 8-127. The undisputed facts show that the motorcycle was purchased in 1979 and was not registered. It has never been registered in this state. According to the evidence, it was purchased for farming operations on Kurtenbachs' farm. It was used to check fences and scout for musk thistles, and for other chores around the farm. Basically, it took the place of a horse.

Would the fact that the insured, both at the time he purchased the motorcycle and during the years since the purchase in 1979 up to the time of this accident, knew that the cycle was to cross the highway that split his farm require him to register the cycle under

K.S.A. 8-127(a)? We think not. We must emphasize that our conclusion is very fact specific. Crossing Highway 56 to obtain access to farming property split by that highway does not, without more, demonstrate that the vehicle was "intended to be operated upon any highway in this state." Thus, crossing Highway 56 at the time of this accident under the particular facts of this case did not require the motorcycle to be registered under K.S.A. 8-127(a). Nor would operation of the motorcycle by an insured within the confines of property owned or rented by the Kurtenbachs require registration of the motorcycle in this state.

The evidence in this case establishes that Scott operated the motorcycle on the township road approximately 10 to 15 times. There is no indication in the record when such operation occurred. In his dissenting opinion, Judge Lewis concluded that operation on the township road constitutes operation on a highway of this state and, thus, the motorcycle, being street legal, was subject to motor vehicle registration within the meaning of Farm Bureau's policy. According to Judge Lewis, the motorcycle was therefore not covered by the policy. We, however, believe the answer to this question is more complex, for at the time of this accident the motorcycle was not, within the meaning of K.S.A. 8-127, being operated upon any highway of this state.

The dissenting opinion relies heavily upon an earlier Court of Appeals decision in *Kresyman v. State Farm Mut. Auto. Ins. Co.,* 5 Kan. App. 2d 666, 623 P.2d 524, *rev. denied* 229 Kan. 670 (1981). In that case, Steven Kresyman, a minor, was injured when his mini-bike collided with the defendant's automobile on Cherokee County road, a highway that passed the farm where he resided as a member of his parents' household. The mini-bike, according to the manufacturer's statement of origin, was not manufactured for use on public streets. It was neither titled nor insured. Had application been made to register the mini-bike, it could not have been registered because it was not equipped as required by K.S.A. 8-1801 *et seq.*

Steven Kresyman's father owned and insured four vehicles with medical benefit limits under each of $2,000. Medical expenses of his son exceeded $14,000. Steven brought action seeking recovery

of $8,000, claiming entitlement to stacked PIP benefits under his father's policies. Recovery against State Farm was denied because at the time of the accident the mini-bike was "of a kind required to be registered in this state" and, therefore, "a motor vehicle with respect to which a motor vehicle liability insurance policy is statutorily required." 5 Kan. App. 2d at 669.

The following language from *Kresyman* was quoted by the dissent:

" 'The mini bike is a motor vehicle under K.S.A. 8-126(b) definition; it is a self-propelled device upon which a person may be and was transported upon a public highway.

" 'Regarding registration, the following appears in K.S.A. 8-127(a):

" ' "Every owner of a motor vehicle . . . intended to be operated upon any highway in this state . . . shall, before any such vehicle is operated in this state, apply for and obtain registration . . . .

" 'It is with respect to this statutory direction that plaintiff makes his material argument. He argues the mini-bike was not "of a kind required to be registered in this state" because the mini-bike was not intended to be operated upon any highway in this state.

" 'In our view, plaintiff mistakenly fails to take into account the K.S.A. 8-142 provision that "[i]t [is] unlawful for any person . . . [t]o operate, or for the owner thereof knowingly to permit the operation, upon a highway of any vehicle, as defined in K.S.A. 8-126, which is not registered. . . .'

" 'Reading K.S.A. 8-127(a) and K.S.A. 8-142 together and giving them both effect, as must be done, it is clear to us that the essence of their direction is that a motor vehicle operated upon a highway is to be registered, with the registration to be obtained before such operation. Various other statutory provisions within the motor vehicle laws and the act provide exceptions and exemptions but they play no role in this case. The "intended to be" wording of K.S.A. 8-127(a) is not an element in the definition of a motor vehicle "of a kind required to be registered in this state."

" 'By operation of K.S.A. 8-127(a) and K.S.A. 8-142, the mini-bike, a self-propelled device transporting a person while being operated on a highway in this state, was a vehicle with respect to which a motor vehicle liability insurance policy was required by the act. This being so, plaintiff's injury was beyond the scope of defendant's obligation to pay PIP medical benefits.' 5 Kan. App. 2d at 668-69."

## Judge Lewis in his dissent noted:

"I particularly rely on the language in *Kresyman* which construes K.S.A. 8-127(a) and K.S.A. 8-142 and says that under those statutes, 'it is clear to us that the essence of their direction is that a motor vehicle operated upon a highway is to be registered, with the registration to be obtained before such operation.' 5

Kan. App. 2d at 669. The motor vehicle in this case was designed to be used on the public highways, it was used on the public highways and, under the statutes of this state, was a vehicle required to be registered."

We agree with *Kresyman* and partially with the dissent's analysis of this issue. However, we must observe a crucial difference between *Kresyman* and the accident in this case. In *Kresyman*, the accident occurred on a county road, which is a public highway. See K.S.A. 8-126(s). The decision in *Kresyman* is dependent upon the fact that the mini-bike was, at the time of the accident, being operated upon a highway of this state:

"We caution that our decision must not be read too broadly. In this case, *the accident occurred at a time when the mini-bike was operated on a public highway* and *the extent of our holding is that at that time* it was a motor vehicle with respect to which a motor vehicle liability insurance policy was statutorily required." 5 Kan. App. 2d at 669. (Emphasis added.)

Unlike *Kresyman*, the accident in this case occurred on Kurtenbach's premises within the meaning of Farm Bureau's policy while Scott was crossing Highway 56. As we noted above, this type of crossing under the particular facts of this case would not subject the motorcycle to the provisions of K.S.A. 8-127(a). Had this accident occurred at one of the 10 or 15 times since 1979 that Scott operated the motorcycle on the county road, no coverage would exist under the policy because the motorcycle at that time would be "subject to motor vehicle registration because of its use." Moreover, it is clear that each time Scott operated it on the county road, he violated the laws of this state by operating an unregistered vehicle upon any highway of this state. See K.S.A. 8-142 (making it unlawful to operate a unregistered vehicle which is subject to registration).

The record in this case establishes that the motorcycle was not intended to be operated upon any highway of this state in a manner which would require registration under K.S.A. 8-127(a). Since 1979, with the exception of 10 to 15 times, it had been used as a horse for farm work, or for fun on property owned or rented by the insured. With the exception of those 10 to 15 times when Scott operated the motorcycle on the county road, the motorcycle's use was consistent with the owners' intended use for farm purposes

and operation within the confines of the owners' property. More importantly, at the time of the accident, the motorcycle was being used consistent with the owners' intended use.

When we read the policy language defining insured premises and consider Kansas law regarding registration, evidence regarding use of the motorcycle since 1979, and the particular facts regarding its use at the time of this accident, we are satisfied that there was coverage under the policy. We are not prepared to say that once the wheels of the motorcycle touched the county road it was required to be registered under K.S.A. 8-127(a). Nor are we prepared to conclude that operating it 10 to 15 times on a county road since 1979, even though in violation of the law, makes the motorcycle subject to registration. Had an accident occurred during any one of the 10 to 15 times, it is clear that no coverage would have existed. Further, had the motorcycle been frequently operated on the highways in violation of the law, such fact might compel a different result regarding the need to register the motorcycle, and there would be no coverage.

We conclude, based upon the particular facts of this case, that the motorcycle was covered under section 2.a.(1) of the Incidental Motorized Vehicle Coverage provision in the Farm Master policy. The accident occurred on the insured premises, and at the time of the accident, the motorcycle was not subject to motor vehicle registration because of its use. We caution that our decision must not be read too broadly. It is important to our holding that the highway in question split the insured property, and it was necessary to cross it rather than travel upon it. This is not a case where the insured property could only be reached by traveling on any highway of this state. Had this accident occurred while the motorcycle was being operated on any highway instead of simply crossing Highway 56, no coverage would have existed under the policy.

## Attorney Fees

The trial court awarded attorney fees to Kurtenbach in his defense of Farm Bureau's declaratory judgment action on the basis of K.S.A. 40-256. The Court of Appeals concluded that the trial court erred in this decision. We agree. However, the Court of Ap-

peals further concluded that attorney fees and expenses should be awarded to Kurtenbach primarily based upon our decision in *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974). Farm Bureau argues that *Upland* provides no basis for the award because the policy language in this case, unlike the policy language in *Upland*, does not require the insurance company to pay for the reasonable expenses incurred by the insured at the company's request. 214 Kan. at 151-52. Before further discussion, some background information regarding the parties' dispute over attorney fees is helpful.

When Lyle Nelson filed suit for damages against the Kurtenbachs, they requested that Farm Bureau provide them a defense and indemnify them under the provisions of the Farm Master policy. Farm Bureau reviewed the facts of the accident and the provisions of its Farm Master policy. Farm Bureau then formally notified the Kurtenbachs that no coverage existed under the policy based upon the exclusions but agreed to defend the Kurtenbachs under a reservation of rights.

After the above notification, Farm Bureau filed a declaratory judgment action under the provisions of K.S.A. 60-1701, specifically requesting that

"the Court interpret the policy in light of the facts and circumstances arising from the accident on July 20, 1992 and that said Court make a determination that Plaintiff has no obligation to any defendant to defend any action or to pay any judgment rendered therein under Policy M40341."

The Kurtenbachs retained counsel to defend against the declaratory judgment action and specifically asked the court to order Farm Bureau to pay for the attorney fees expended in defending the declaratory judgment action.

On this issue, the Court of Appeals after an analysis of Kansas law concluded:

"In the present case, the insurance policy does not contain specific language expressly obligating Farm Bureau to pay the Kurtenbachs' attorney fees incurred in this declaratory judgment action. However, because the insurance policy provides coverage and Farm Bureau had a duty to defend, under the *Upland* rule, the Kurtenbachs are entitled to recover their attorney fees and expenses incurred

in defense of the declaratory judgment action. See 214 Kan. 145, Syl. ¶ 2. Accordingly, the trial court did not err in awarding those fees."

*Upland* was a declaratory judgment action brought by Upland Mutual Insurance, Inc., seeking a determination that no coverage existed under a homeowner's policy. The insureds prevailed on the coverage issue. In addition, the court awarded the insureds their fees and expenses in the declaratory judgment action, stating:

"We further hold that the [insureds] are entitled to recover attorney fees and expenses of litigation incurred in defense of this declaratory judgment action. We recognize that there is a decided split of authority on the subject. The cases pro and con are cited in 7A Appleman, Insurance Law and Practice, § 4691 (1962). Appleman after pointing out the decisions holding that where an insurer failed to defend until after an adverse decision in a declaratory judgment action instituted by it, the insurer was not liable to pay the attorney fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith or stubborn litigiousness on the part of the insurer, makes the following critical comment:

'. . . But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. . . .' (pp. 512,513.)

*We find the comments of Appleman just quoted to be persuasive.* In this case the trial court ruled that Upland Mutual is obligated to pay the [insureds'] attorney fees incurred in the declaratory judgment suit—not on the basis of a denial of a claim without just cause or excuse under K.S.A. 40-256—but because the filing of this suit constituted a 'request' by Upland and therefore the company is obligated under its policy to reimburse the [insureds] for all reasonable expenses incurred at the company's request." (Emphasis added.) 214 Kan. at 151-52.

Farm Bureau points out that the trial court in *Upland* noted that the "insurance contract issued by the Plaintiff requires it to reimburse insured for all reasonable expenses incurred at the company's request." According to Farm Bureau, absent some similar language in the insurance policy in the case at hand, the "American rule"

regarding fees should apply. That rule, which is well established in Kansas, is that in the absence of statutory or contractual authorization, each party to litigation is responsible for his or her own attorney fees. See *T.S.I. Holdings, Inc. v. Jenkins,* 260 Kan. 703, 727, 924 P.2d 1239 (1996).

The trial court in *Upland* did focus upon the idea that by filing a declaratory judgment action, the insurance company was "requesting" the insured to perform certain acts for which it was required to reimburse the insured for reasonable expenses. Further, in affirming the trial court's decision to award fees, this court did note the same language relied upon by the *Upland* trial court. However, the rationale for this court's decision in *Upland* also rested upon the language quoted from Appleman suggesting that the expenses connected with enforcing the contractual right to a defense under a policy of insurance by an insured who prevails in defending his or her coverage against its own insurer's declaratory judgment action should be reimbursed by the insurer. See 214 Kan. at 152.

Although the Farm Master policy in this case did not include, as did the policy in *Upland,* a provision that the insurer would reimburse the insured for expenses incurred by the insured *at the insurer's request,* the policy did include language that "reasonable expenses any insured incurs" will be reimbursed by the insurer. The question of attorney fees and expenses where the insurer agrees to defend under a reservation of rights and initiates a declaratory judgment action to relieve itself of that duty and coverage remains.

The "decided split of authority" referred to in *Upland* still exists. See Annot., 87 A.L.R.3d 429 § 2[a]; 7C Appleman, Insurance Law and Practice § 4691 (1979); 15A Couch on Insurance 2d § 58.141 (rev. ed. 1983); Jerry, Understanding Insurance Law § 111[3] (2d ed. 1996). Courts which have decided this issue have adopted three basic positions: The first is that an insured may not recover his or her attorney fees expended in a declaratory judgment action, even where the insurer is ultimately found to owe coverage and a duty to defend. The second is that an insured may recover fees if it can be shown that the insurer acted in bad faith in denying coverage

and a defense. Still a third position is that, if the insurer is found to owe coverage and a duty to defend, attorney fees are available. See *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 193-94, 342 S.E.2d 156 (1986), and cases cited therein.

In *Upland*, we held:

"Where an insurance company denies coverage and the duty to defend under a homeowner's liability insurance policy and brings a declaratory judgment action against the insured to determine that issue, the insured is entitled to recover attorney fees and expenses incurred in defense of the declaratory judgment action if it is determined that there is coverage and a duty to defend." 214 Kan. 145, Syl. ¶ 2.

We later reaffirmed this holding in *Missouri Medical Ins. Co. v. Wong*, 234 Kan. 811, 823, 676 P.2d 113 (1984).

Farm Bureau notes in this case that it agreed to provide a defense under a reservation of rights and, therefore, did not violate its duty to defend under its contract of insurance, rendering *Upland* inapplicable. It is at this point that we must disagree with the position advanced by Farm Bureau.

It is true that Farm Bureau agreed to defend the case against Kurtenbach under a reservation of rights. However, Farm Bureau then instituted a declaratory judgment action seeking a determination that it had no duty to defend or provide coverage under its policy. The Kurtenbachs were required under these circumstances to incur expenses and attorney fees to maintain their right to a defense under the policy. As we stated in *Upland*:

" '[T]he insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he never had the contract right mentioned above.' " 214 Kan. at 152 (quoting 7A Appleman, Insurance Law and Practice § 4691, pp. 512-13 [1962]).

There is a valid distinction to be drawn between an insurer who agrees to defend its insured and then actually does so even under a reservation of rights, and an insurer who, although expressing its intent to defend under a reservation of rights, files a declaratory judgment action seeking a determination that it has no duty to defend or cover the insured under the policy. Where an insurer

gives notice of its intent to defend under a reservation of rights and then brings a declaratory judgment action against its insured before the underlying suit is resolved, seeking a determination that it has no duty to defend, the insured must expend his or her personal funds to enforce a duty under the existing policy—the duty to defend.

Consistent with our decisions in *Upland* and *Wong*, we therefore hold that where an insurer denies coverage and the duty to defend and brings a declaratory judgment action against the insured to determine that issue, the insured may recover his or her attorney fees incurred in the defense of the declaratory judgment action if it is determined as a result of that action that there is coverage. *Upland*, 214 Kan. 145, Syl. ¶ 2; see *Wong*, 234 Kan. at 823. The same rule is applicable where an insurer agrees to assume the duty to defend under a reservation of rights, but before the underlying matter is resolved brings a declaratory judgment action seeking a determination that no duty to defend or coverage exists.

The availability of expenses and attorney fees in such a situation is necessarily dependent on the existence of coverage. If it is determined in the declaratory judgment action that no coverage exists under the policy, the fees and expenses incurred by the insured are his or her own expense. If no coverage exists, the insurer is without obligation to either defend or to pay for any judgment rendered. Neither the insurance policy itself nor any statute in this state would require the insurer to pay for other than its own expenses and fees in such declaratory judgment action.

However, if it should be determined that coverage exists, one may conclude that the insured was compelled to expend his or her own funds in litigation expenses to obtain the benefit of his or her bargain with the insurer. If these expenses are not reimbursed to the insured, the insured fails to obtain a substantial benefit already paid for under the policy: the defense of the claim.

The Kurtenbachs have also asked in this case for fees in the amount of $800 and expenses in the amount of $42 incurred in connection with the preparation and argument before this court. We award those fees pursuant to Rule 7.07 (1997 Kan. Ct. R. An-

not. 49). We also affirm the Court of Appeals' award of attorney fees in this matter.

Affirmed as modified.